Microsoft Office Word Version Title Microsoft Office Word Document MSWordDoc Word.Document.8 Okay, the next argued case is number 16, 2465, MasterMind Software, Inc. v. Microsoft Corporation. Mr. Steiner, when you're ready. Just in case we haven't heard enough about user selection. Yes, this appears to be a shockingly similar technology to us today. Thank you, Your Honors, and may it please the Court. The patents at issue here today talk about data mining from a Customer Relationship Management, or CRM, database program. We're here to address two issues. One is the construction of the term, Pivot Table, by the District Court. A term that the patents did not redefine from its plain and ordinary nature. The other is to address the District Court's decision that some of the MasterMind's apparatus claims impermissibly mix statutory classes. Regarding the definition of Pivot Table... Can we start backwards? Certainly. Can we start with the second issue? Absolutely. Okay. I know that our cases are... It's hard to get a bright line, necessarily, from the cases. And your argument is that Ultimate Pointer is probably the best support for what you want to say here, right? We think so, but not only that it's the best support for the outcome we'd like, but that it best encapsulates the state of the law. One problem I have, and this is what I just want you to talk to me about. When you look at the language that we're talking about here, it does refer to user selection. And in that language, it says the machine receives from the user a selection of one or more of the user-selectable database fields. And elsewhere in your patent, you use language that says the system is adapted to. Now, you're essentially asking us to put the adapted to language into this claim as well. Is that right? I don't think we are, Your Honor. This Court has never taken the line that words adapted to, configured to, sized for are necessary modifiers of action verbs, as long as there is sufficient structure in the claim language itself to understand what the apparatus being claimed is. I understand that. I guess part of my problem, and maybe that's part of what I'm saying is your problem, is that you did use adapted to in other places. So its absence here could be more meaningful than it might be in a different circumstance. And what I would say is this is not the only case in which there have been claims where in front of some action verbs, the word adapted to appeared. In others, they didn't. The Court has never said that that's a requirement. For example, the MEC case had some language that included the modifying words, some language that didn't. Requiring modifying language turns this indefiniteness doctrine into a bit of a gotcha doctrine. It's a trap for... What kind of doctrine? Gotcha. Gotcha. I apologize. I started practicing in New York, and that particular phrase has never left my vocabulary. Okay. Isn't the answer that it depends on whether that's the distinguishing factor from the prior art, whether that's the distinguishing factor of rendering it obvious or non-obvious, rather than whether it's always or never to be considered? I do think that it depends, is the right answer, Your Honor, because this doctrine of indefiniteness comes from the question of is it clear what the claims cover or not? Do the claims cover a system when it is built and sold, or does infringement occur during the active use? And that's the concern that this Court's precedent has addressed. If you have an action that's untethered to structure, there's a question as to when infringement occurs, what the claims cover. If you have an action that must be performed by the user, you have an active verb talking about the user does this. How can you say whether that's covering the system or the actions? When you're talking about the actions performed by the user interface, you're talking about the capabilities, the configuration of the system. In other words, I think what you're saying is that infringement would occur when the apparatus is made, used, or sold because that apparatus has the capability of performing the function that's in the claim? Exactly, Your Honor. And that's very much what these claims are. These are apparatus claims directed to the user interface, the system. Do you want to discuss that further before I move on to the claim construction? Well, going back to that for a minute, I mean, I think one of the arguments that is made is that the language receiving from the user, a selection of one or more user-selectable databases suggests that the user is performing some sort of action. How do you respond to that? Because this is a user interface, the configuration of the software is inherently all about how it interacts with the user. But the words here are very carefully not directed to claiming the user does this. It's receiving the selection from the user. It's responding to the selection made by the user. That's all performed by the software, by the user interface. The claim does not say the user selects. The claim says the software receives a selection from the user. That's different because we can tell what it takes to fall within those claims. It's a user interface that is configured in that manner. Does that answer your question, Your Honor? Okay, go for you. You can go to your claim, sorry. So on the issue of claim construction, pivot table is a term that, while maybe not common to your average person on the street, was common to people skilled in the art of software development working with spreadsheets. It is a term that the patent never intended to redefine. And we know that because the patents expressly state that a pivot table is an analytical function that is found in conventional spreadsheet applications, such as Microsoft Excel. That appears in the specification for the 850 patent in column 2, starting at line 5 and going through lines 22. That is an express statement in the patent to invoke the plain and ordinary meaning of the term. It could not be clearer. And absent any lexicography or disclaimer to the contrary, the patentee is entitled to the full scope of the plain and ordinary meaning of that term. We propose that that plain and ordinary meaning is a computer software object or structure defining an interactive table that can show the same data from a list or database in more than one arrangement. That definition comes straight from Microsoft's own contemporaneous computer dictionary. It's talking about the pivot tables that existed in Microsoft Excel at that time, the exact same pivot tables that the patent is referencing. What Microsoft has proposed, and what the court adopted, is that a pivot table isn't really the underlying software. A pivot table is just this thing you see on the screen. That's not the way a person of ordinary skill in the art, that's not the way a software developer or a computer programmer would understand a pivot table or anything else in software. What you see on the screen is literally... Is it your position that a person of ordinary skill in the art would interpret a pivot table in one of two ways, and that you don't have to choose between the two ways? It could be either? I think the idea of the two ways is a misnomer. It's a misdichotomy that was introduced by Microsoft's argument. They've suggested that there's a fundamental change in category between a pivot table whose data display has numbers populated in it and a pivot table whose data display is blank. They've created this 1-0 distinction. I don't think there is one. I think a pivot table exists when the table exists. There's data in the pivot table's cache. That's part of the action of creating a pivot table. But whether the data display is blank, has four fields populated into it, has one field, has three, it doesn't matter. And that's the way these pivot tables work. You could be looking at a pivot table whose data display is currently displaying analysis of eight fields, and you could go and deselect all of them so that now zero fields are being displayed. The pivot table goes blank. The data display goes blank. The table is still there. The structure is still there. The data is still sitting in cache. All of the metadata, all of the functions, all of the richness that makes this an analytical function, as identified in the patent, they're still there. And as soon as you drag and drop some different fields in in a different arrangement, the display pops up with a different way to look at the data. So the point is that the pivot table is something unique to computers. It is this almost metaphysical operational structure that can take an enormous amount of data with different fields, different attributes, and analyze it different ways. But, all right, so you've explained very nicely the prior art. So where is the distinction that supports these claims? You mean, Your Honor, how was the prior art distinguished in prosecution? No, to understand now, since this is really, I think, what the district court also adopted as his understanding of the pivot table and how it worked. Isn't that correct? Yes, I think the district court agreed with how the pivot table worked, but then took the leap that a pivot table, as defined in the patents, only exists when there is data actively being displayed in it. Right, so in other words, as I understand it, the district court conceded that the plain meaning could be a blank table or a populated table, but in the context of this specification and this patent, the district court ultimately concluded that it has to be a populated table. I believe that was what he concluded. And, yes, I do believe he agreed that people use pivot table both ways. And we think that it was legal error, having recognized that people skilled in the art use pivot table both ways, to refer both to the image on the screen and the underlying structure, to say, but in this context, we're going to limit the patent to just a populated table. Now, you do agree, though, that, you know, kind of setting the facts of this case aside, if there was an ordinary meaning of a word, but then when that same word is understood in light of the specification, the prosecution history, it might have a different meaning, right? It could, but that didn't happen here. But I think that's what the district court was saying, was that it has, perhaps pivot table has a meaning that is broader in the ordinary sense, but when I read it in light of the specification, I have a different understanding, and I think that as used in the specification, the inventors used the word pivot table to mean a table that's populated. That's... I think that an inventor certainly can limit the meaning of an ordinary term in the specification. That didn't happen here. There was no lexicography. In fact, Microsoft didn't even argue lexicography until... Well, but they argued, well, I mean, even in the context of the language itself, the full phrase says automatically generate a pivot table within the electronic worksheet according to the database query wherein the pivot table contains the CRM data from the CRM database. So, I mean, we're talking about generating a populated pivot table, right? Addressing the fact of the CRM, of the pivot table containing the data from the query, that all exists in the pivot cache the entire time, whether it's displayed on the screen or not. Part of the pivot table object is this data cache, which contains all of that information. That absolutely happens as part of the process of creating the pivot table, and that's represented on the screen by the field well listing all of the different database fields that are in the cache. The question is then, on the analytic data display, what's been selected from the field well? What's been selected from the cache? Where have you placed it? And that drives the representation of that data, the analysis of that data performed by the pivot table. But it doesn't change the fact that, yes, when you create the table, all of that data from the query is in the cache. Separate from the creating step is the presenting step in claim one, and then the optional for claim one and required for claim three formatting step. Those are different activities. Creating the pivot table happens when you create the object in the source code, in the software. Presenting it, it appears on the screen, and in either case there's no requirement that it be presented with a particular set of analytics displayed in the data display. To the contrary, you can present it, you can even present it with one set of data, unclick all of the fields from the field well, the display goes blank. The technical advisor and the court's definition would tell you, the pivot table has been destroyed. It hasn't. It's still sitting there. It's just waiting for someone to pop up a new arrangement of the data. Does that answer your question, Your Honor? I think so. And then briefly, because I realize I'm short on time, this issue of prosecution disclaimer. Can I just go back for a minute? Sure. Okay, so your point, as I understand it, is that even though an earlier limitation might talk about generating the pivot table containing CRM data from the CRM database, later on when it's talking about presenting the pivot table with antecedent basis, we should understand that to not necessarily include the CRM data. No, no, it does include the CRM data. But it doesn't have to be shown. It doesn't have to be actively shown at that moment in time, but the CRM data is part of that pivot table that is presented. All right. Now, even if we don't think the prosecution history is a disclaimer, it is informative that when, in your history, you talk about constructing a pivot table or creating a pivot table by populating it, right? And you use the word creating in conjunction with populating it with data. There's a distinction there, Your Honor. Yes, the one-sentence summary of the Conlon reference referred to it as a drag-and-drop method for creating a pivot table. That was language originally put in by the examiner. It was not. No one disagreed with it because, frankly, the definition of pivot table was never an issue. No one was arguing about what was or was not a pivot table. What the Conlon reference describes is a three-step process. First, you have a set of data, in the Conlon example, in Excel to begin with. You select the data. Then you create the pivot table. And then you use the drag-and-drop formatting process to move the data around within the pivot table, starting from the field level. Mastermind distinguished the Conlon patent based on the fact that it did not automatically select the data from any source, let alone a CRM database, to create the pivot table. The issue of the dragging and dropping wasn't part of Mastermind's argument. It wasn't what Mastermind's invention was directed towards, and that wasn't the point of distinction. There was no intention in any of that exchange, either on the examiner's part or on Mastermind's part, to redefine what a pivot table was or to narrow its meaning. Okay. Let's hear from the other side, and we'll save you a rebuttal, Mr. Steinert. Thank you, Your Honor. Ms. Wilson. Good morning, Your Honors. May it please the Court. Mastermind in this litigation is attempting to recapture ground that it prior art rejection during prosecution of these patents. So you think it's a disavowal, clear and unmistakable disavowal? I think it is an unmistakable disavowal, Your Honor, but I also don't believe you have to get that far in order to construe a pivot table in the way that the district court construed it. Can you just do me a favor? Can you explain, you stipulated to non-infringement under this construction, so how does the allegedly infringing product work with a blank table? Yes, Your Honor. So the allegedly infringing product is Dynamic CRM working with Microsoft Excel, and the way Dynamic CRM works, if a user wants to create a pivot table, they first interact with Dynamic CRM, and they choose basically the data source that they want to use for their pivot table. Excel then is then launched, and what happens is this blank shell, what Conlon called a region layout diagram, or a drag and drop form, appears in Excel. The fields for the data that were selected by the user in the CRM program appear in the field well, but then when the user wants to create their Excel pivot table, they have to either, they interact with the Excel spreadsheet program one way, they drag, same as in Conlon, drag and drop fields in the various regions of the region display, a region layout diagram that's on Excel. And so that's how they create the pivot table. Okay, so it doesn't automatically populate the pivot table. Absolutely not, no, Your Honor. So you would agree, I take it, with the district court, that the common meaning of pivot table could be one that's empty or one that's populated. No, Your Honor, I wouldn't say that we would agree that in the abstract, that pivot table could be one that is, you know, could just be that empty shell. We wouldn't agree with that. You wouldn't agree with that? Well, you just described your empty shell as a pivot table. No, I said it's an empty shell, and then what happens is you create a pivot table when you drag and drop. So no, absolutely would not agree that an empty shell is a pivot table, and certainly not in the context of these. Well, it's just because you don't have a table until you have figures or numbers or whatever it is that you're directed to. But as far as the overall breadth, didn't the district judge define pivot table quite broadly to include the What the district court said was that he had seen, you know, evidence that it had been used, that the term pivot table had been used, to include, you know, to refer to an empty shell for which one still must pick the fields. The pivot table empty shell has a row field, a column field, a data field, and then there's something else on a page field that wasn't really at issue here. But you have nothing in that empty shell until you pick the field that's going to go in your row. Right, but as I understand the district court's analysis, it was pivot table could have either meaning, and if you're just looking at how it's been used historically, but in the context of this patent, it must have this particular meaning. That's correct. The district court did say he'd seen it used either way. I don't disagree with that. What's that? You disagree with that, that the ordinary meaning of pivot table includes an empty table. You've said you disagree with that, right? Yes. Where in the record is there evidence to support that that is not the ordinary meaning of pivot table? Well, first of all, there's nothing in the patent itself to suggest that an empty shell is a pivot table. They don't talk about empty shells. They don't talk about how fields in the patent, you know, get into that empty shell, so there's nothing in there. So what happens is one has to end up going to other intrinsic evidence or, you know, as Mastermind did, to the extrinsic evidence. In the intrinsic evidence, you have the Conlon patent, which is, I said, a Microsoft patent directed to Excel, and, you know, the subject of what we say gave rise to, you know, a disclaimer and certainly defined pivot table, but Conlon says the empty shell is a drag-and-drop form or a region layout diagram. He doesn't say it's a pivot table, and that's the intrinsic evidence, and that's what I think you would go to. But you didn't have any extrinsic evidence that said that it only has one meaning. It's got to be populated. We did not, Your Honor. The Mastermind relies, for example, on the Excel 97 developer's guide, and in that there is a reference, you know, that could be construed as saying a pivot table is a blank shell. On the other hand, in the Excel 97 developer's guide, it also says the pivot table is constructed by dragging and dropping fields into an empty skeleton. So at, you know, 1575, at 1444, that same guide that Mastermind says defines an empty shell as a pivot table also calls it an empty skeleton and also says that you've got to drag and drop fields into this empty skeleton in order to construct your pivot table. Okay. So in this case, Your Honor, what's very stark is originally Mastermind's 279 patent, which is a parent patent to the patents in suit, had a claim term generating a pivot table within an electronic worksheet. The examiner said that the Conlon reference, which is a Microsoft reference, Microsoft's patent directed to Excel, taught generating a pivot table within an electronic worksheet, and that's at 322, where the examiner makes his rejection. In so doing, the examiner pointed to a section of Conlon, which is column 2, lines 25 to 46, which talks about having, you know, taking these fields, interacting with a spreadsheet program, taking these fields, dragging the fields, and dropping them into an empty shell. And that's what the examiner pointed to as Conlon teaching that a pivot table is generated. Mastermind, in order to overcome that rejection, Mastermind amended its claims and added the word automatically in front of generate a pivot table, required that each one of its claims automatically generate a pivot table within an electronic worksheet. And then after doing so, they said this. They then traversed the examiner's rejection based on Conlon and said this. Conlon describes a user interface for a spreadsheet application that allows a user to drag and drop fields to manually create a pivot table on a spreadsheet. So they're very plainly talking about having what Conlon calls a region layout diagram, what the Excel developer's guide has called the empty skeleton, and picking the fields from a field well and putting them in the rows, columns, and data section in order to create a pivot table. Mastermind went on to say Conlon requires that the user interacts with the spreadsheet application directly and that the user manually selects each of the fields. And that was in the summary of the invention of Conlon. They have a footnote summary. At the very next sentence, after saying that Conlon teaches dragging and dropping to create manually a pivot table, they say applicant has amended claim one to include limitations of previously dependent two, claim two to clarify that the claimed method automates the creation of a pivot table within a worksheet directly from a CRM application. So it's right there that the entire claim term or second claim term that was at issue here was what does it mean to automatically generate a pivot table? At this juncture, Mastermind agrees that user interaction with a spreadsheet application to create a pivot table is not automatic. That automatic means it can't be user interaction. What is your response? They concede that that language is all in there, but they say that the thrust of their argument wasn't the distinguishing between a manual system where there's an empty shell and their system. They said what their argument was that Conlon didn't describe a system for communication between a CRM application and a spreadsheet application at all, let alone automatically. That is a separate argument that they made, but the disclaimer that we're talking about or the definitional piece here, whatever analytical framework that you want to use, they do not dispute that when they're discussing Conlon describes a user interface for a spreadsheet application that allows a user to drag and drop fields to manually create a pivot table on a spreadsheet. They don't dispute that they were talking about clicking on a field over here. They said that they were just summarizing Conlon. That wasn't their attempt to distinguish the claim. There's two points to that. First of all, we'd say this is still highly probative evidence of what they meant by pivot table and what they meant by manual creation of a pivot table. Second, though, we would disagree that they did not use that to distinguish their automatically generated pivot table claims from manually generated pivot table claims. Certainly, it's in the argument section here, but down below on 1501, let's see, about the third paragraph down, they say, Conlon describes a technique that requires a user to interact with a user interface of the spreadsheet application to manually select the fields for a pivot table. Conlon does not describe any mechanism by which this process can be automated. That sentence is virtually identical to their second sentence where they're describing the drag and drop feature of Conlon. Now, I know Mastermind argues, at least on reply, they argued, oh, we were talking about something completely different there, a completely different field selection. But Conlon doesn't discuss two different types of manual field selection. In the section cited by Mastermind for the proposition that they were talking about something else, that that section of Conlon, I believe it's that column five of Conlon, Conlon discusses Excel and discusses the idea that the user selects a data source. That's what the user does. Whether it be an external database, whether it be an Excel worksheet, the user selects a data source. And then all Conlon says further about that is that when you select the data source, the field well gets populated with the fields for the data source that was selected by the user. They argue that Conlon actually says that it talks about a pivot table data display. So in other words, it seems to distinguish between a pivot table, qua pivot table, and a pivot table data display. So what we'd say, Your Honor, about that is first of all, the examiner understood the pivot table data display to be a pivot table. And when the examiner made his rejection, he pointed to column two, lines 25 to 46 of the summary of the invention. And there it's talking about creating a pivot table, and it refers to it as a pivot table data display all throughout. So the examiner clearly understood a pivot table and a pivot table data display in Conlon to be the same thing. Mastermind, when they summarized Conlon, they did the exact same thing. They didn't say, Oh no, we're wrong here. Pivot table data display is something completely different. That's an argument that they're making some 10 years later. What they said was, they said also that Conlon shows this dragging and dropping in order to create a pivot table. And then, as was set out in our briefing, fundamentally, if you look at the description in Conlon of a pivot table data display and the description in the patents in suit of what is a pivot table, it's the same description. They have the same function. In fact, Conlon says that the pivot table is the same thing as a cross tab. And that's exactly what Mastermind says. And they both say that they are there to allow a user to analyze, summarize, and view data in different ways. Both of them say summarize and analyze large amounts of data. They're using those terms absolutely equivalently. Okay. Any more questions? Yeah, we never got to indefiniteness, but there's only 30 seconds, 10 seconds left. That's all right. All right. I think that's all right. Thank you. Okay, thank you Ms. Wilson. Mr. Steinert. Thank you, Your Honor. I would like to very briefly respond to the comment that Conlon does not disclose more than one user selection of fields because that's not true. If you look at the abstract of the Conlon Pack, which appears on appendix page 1067, Conlon says, a drag-and-drop form displayed directly on a spreadsheet enables the user to drag-and-drop fields directly on a spreadsheet. Then it goes on to say, fields of data selected by the user, user field selection, are displayed within a field well and array included with a pivot table button bar. The detailed description of Conlon goes on to explain how that happens. It is a multi-step process. First, the user selects the fields that are going to become part of the pivot table. That creates the pivot table field well populated with those fields. Then, the user drags and drops fields from the field well to format or create the particular data display. That's the distinction. The description in Conlon of the process of selecting fields for the field well from the data source, that appears in column five of the Conlon patent from around line eight through around line 48, which is on appendix page 1078. Conlon says, at the end of that process, if the user selects a control button labeled finish and has chosen to place the pivot table data display on a new worksheet, a drag-and-drop form 30 is opened on the new worksheet as shown in figure two. Conlon then goes on to describe formatting the data display with the fields from that field well. That starts in column six around line 36. These are multiple steps. The pivot table was created when that data display, though empty, popped up and the field well popped up with the list of fields that had been selected by the user. That process is completely manual, as described in Conlon. Mastermind talks about an automated way of doing that, not from within the user interface of the spreadsheet application, but rather from within the user interface of the CRM software. A reporting module in the CRM software that performs those functions automatically based on the user selection within the CRM software that then automatically sends that information over to the spreadsheet application to create the pivot table. That's what the patent is talking about. That was the distinction drawn in the prosecution, not attempting to redefine pivot table. Okay, any more questions? Jim, any more questions? Thank you. I think we have the issues in mind. Thank you both. The case is taken under submission.